IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

HECTOR R. MARTINEZ,                :    CIVIL ACTION
                                   :    No. 13-6294
          Plaintiff,               :
                                   :
     v.                            :
                                   :
BASTIAN FREUND et al.,             :
                                   :
          Defendants.              :

M E M O R A N D U M

EDUARDO C. ROBRENO, J.                        April 10, 2015

          Plaintiff Hector R. Martinez brings this civil rights
action against Defendant Philadelphia Police Officer James W.
Arentzen. Plaintiff claims Defendant subjected him to false
arrest, false imprisonment, and malicious prosecution, in
violation of 42 U.S.C. § 1983, as well as malicious prosecution,
false imprisonment, and intentional infliction of emotional
distress, in violation of state law. Defendant has moved for
summary judgment and, for the reasons that follow, the Court
will grant the motion.

I.     **FACTUAL BACKGROUND**[1]

On October 12, 2011, a robbery took place at Hyperion Bank on Girard Avenue in Philadelphia ("the Hyperion Robbery"). Compl. ¶ 11. Defendant,[2] as lead investigator, interviewed three witnesses: the bank teller complainant/victim, the bank teller at the next counter over, and a bank customer service representative. Pl.'s Br. 5-8;[3] Def.'s Br. Ex. 1, Aff. Probable Cause 2. Defendant presented to each witness a "photo array consisting of eight colored photos of males," but none was able to identify the perpetrator. Aff. Probable Cause 2. On October 20, 2011, bank surveillance photographs taken during the robbery were published in the Philadelphia Daily News under the "Catch Me if You Can" segment. Id. As is evident from a photograph that ran in a later story reporting on Plaintiff's arrest, at least one surveillance photograph published in the Daily News showed "the alleged bank robber from the waist up to the head and including the fingers on the left hand." Pl.'s Br. 12; see also id. Ex. A (reproducing a Philly.com article with the surveillance photograph). As Plaintiff notes, the face in the

---

[1]      In accordance with the appropriate standard of review for motions for summary judgment, the Court views the facts in the light most favorable to Plaintiff as the nonmoving party.

[2]      As noted in the Procedural History section below, the only Defendant remaining in the case is Police Officer Arentzen.

[3]      Because Plaintiff's brief lacks page numbers, the Court refers to those imposed by ECF.

photograph is "obstructed by glasses, a hat, and a hoody," although "the alleged robber's left hand is clearly visible"-- albeit only to the second knuckles of three or four fingers. Pl.'s Br. 12; see also id. Ex. A. After the "Catch Me if You Can" story ran, the Federal Bureau of Investigation ("the FBI") received two tips identifying the man in the surveillance photograph as Plaintiff. Aff. Probable Cause 2. Thereupon, Defendant placed Plaintiff's photograph in an array and again presented it to the three witnesses. Id. This time, the bank teller who had been working at the counter next to the complainant identified Plaintiff as the bank robber. Id.

On October 27, 2011, after swearing out the Affidavit of Probable Cause and obtaining an Arrest Warrant, Defendant arrested Plaintiff for the Hyperion Robbery and charged him with robbery, theft by unlawful taking, receiving stolen property, possessing instruments of crime, terroristic threats, simple assault, and recklessly endangering another person. Pl.'s Br. 15; Compl. ¶ 12. Unable to afford the cost of posting bail, Plaintiff remained in jail until his first preliminary hearing on November 16, 2011, at which point he was released on condition of house arrest. Compl. ¶¶ 13-14, 18, 23; Pl.'s Br. Ex. B, Municipal Court Docket 3. On December 22, 2011, after a number of additional hearings, Plaintiff's criminal charges were dropped. Compl. ¶ 24.

Plaintiff alleges that, upon his arrest and during his detention, Defendant possessed information indicating that Plaintiff could not have committed the Hyperion Robbery. Specifically, Plaintiff has a skin condition known as hyperlipidemia type II that causes giant warts to grow on his hands. Id. ¶ 19; see also Pl.'s Br. 19. He alleges that, due to this "obvious" "physical abnormality," Defendant "knew or should have know[n] that plaintiff was not the bank robber . . . [since] [he] even had photographs of the real robber's hands and the plaintiff's hands." Compl. ¶¶ 19, 25. Plaintiff stresses that Defendant "should have, at the very least, analyzed and investigated, [sic] the evidence that was available to [him]." Id. ¶ 26.

In light of these allegations, Plaintiff claims that his arrest, detention, and prosecution were intentional violations of his civil rights. Id. ¶¶ 31-32. He has pled the following claims: civil rights violations under 42 U.S.C. § 1983 (Count I); malicious prosecution and malicious abuse of process of law (Count II); false imprisonment (Count III); and intentional infliction of emotional distress (Count IV). Id. ¶¶ 40-53. Accordingly, he seeks compensatory damages, punitive damages, attorneys' fees, and costs.

## II.  PROCEDURAL HISTORY

On October 28, 2013, Plaintiff filed his Complaint in federal court. ECF No. 1. Plaintiff initially sued FBI Special Agent Bastian Freund and Philadelphia District Attorney R. Seth Williams, as well as Police Officer Arentzen. Compl. ¶¶ 3-5. However, on March 11, 2014, per the parties' stipulation, the Court ordered all claims against Defendant Williams dismissed. ECF No. 20. On April 29, 2014, upon Defendant Freund's motion to dismiss and Plaintiff's concession thereto, the Court dismissed all claims against Defendant Freund. ECF No. 27. Accordingly, Defendant Arentzen is the only remaining defendant in the case.

On February 12, 2014, Defendant filed an Answer. ECF No. 13. During discovery, a dispute arose that led to Defendant's filing of a motion to compel on July 22, 2014. ECF No. 28. In resolving the motion to compel, the Court ordered Plaintiff to submit to a deposition. ECF No. 30. The Court also noted "Plaintiff's complete failure to respond to Defendant's discovery requests," and imposed the following sanctions: "[a]ny and all claims for lost wages are dismissed," and "Plaintiff is not entitled to any additional discovery." ECF No. 30. On September 11, 2014, following the close of discovery, Defendant filed a motion for summary judgment. ECF No. 31. The Plaintiff has responded (ECF Nos. 33, 34) and Defendant has filed a reply (ECF No. 35). The motion is ripe for disposition.

## III. STANDARD OF REVIEW

Summary judgment is appropriate if there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "A motion for summary judgment will not be defeated by 'the mere existence' of some disputed facts, but will be denied when there is a genuine issue of material fact." Am. Eagle Outfitters v. Lyle & Scott Ltd., 584 F.3d 575, 581 (3d Cir. 2009) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986)). A fact is "material" if proof of its existence or nonexistence might affect the outcome of the litigation, and a dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248.

The Court will view the facts in the light most favorable to the nonmoving party. "After making all reasonable inferences in the nonmoving party's favor, there is a genuine issue of material fact if a reasonable jury could find for the nonmoving party." Pignataro v. Port Auth., 593 F.3d 265, 268 (3d Cir. 2010). While the moving party bears the initial burden of showing the absence of a genuine issue of material fact, meeting this obligation shifts the burden to the nonmoving party who must "set forth specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S. at 250.

6

**IV.   DISCUSSION**

A.   <u>Legal Standards</u>

In order to state a claim under 42 U.S.C. § 1983, a plaintiff "must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." <u>West v. Atkins</u>, 487 U.S. 42, 48 (1988). Here, Plaintiff alleges that his Fourth and Fourteenth Amendment rights were violated when Defendant falsely arrested, falsely imprisoned, and maliciously prosecuted him.[4]

---

[4]     There appears to be a slight discrepancy as to which violations form the basis of Plaintiff's claim under 42 U.S.C. § 1983. Plaintiff alleges in the Complaint that Defendant violated his "federal civil rights as guaranteed by 42 U.S.C. § 1983 by falsely arresting, imprisoning, and charging him with bank robbery." Compl. ¶ 1. Count I bears the byline "Civil Rights Violations" and accuses Defendant of violating Plaintiff's "right to be secure in his person and property, his right to be free from the [sic] unlawful detention, to be free from unlawful seizure of his person and from false arrest, and to [sic] due process of law." <u>Id.</u> ¶ 43. Defendant, on the other hand, characterizes the § 1983 claim as based only on "federal false arrest" and "federal malicious prosecution," Def.'s Br. 1, a position which Plaintiff does not correct in his response: "[Plaintiff is] alleging federal claims for violations of plaintiff's Civil Rights pursuant to his right to be free from False Arrest and Malicious Prosecution and state law claims for Malicious Prosecution, False Arrest, False Imprisonment, and Intentional Infliction of Emotional Distress." Pl.'s Br. 26. It is thus unclear whether Plaintiff has pled false imprisonment as part of his § 1983 claim. The Court follows the language of Count I and the Complaint generally, and will analyze the claim as including false imprisonment, along with false arrest and malicious prosecution.

Defendant, as a government official, may be shielded from liability resulting from Plaintiff's claim if qualified immunity applies. "The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Pearson v. Callahan, 555 U.S. 223, 231 (2009) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). The Supreme Court requires courts to make two inquiries in determining whether to award qualified immunity: whether the official violated one of the plaintiff's constitutional rights, and whether that right was clearly established at the time of the incident. Saucier v. Katz, 533 U.S. 194, 200 (2001). Courts may consider these inquiries in any sequence they wish. Pearson, 555 U.S. at 236. In particular, the clearly established inquiry "turns on the 'objective legal reasonableness of the action, assessed in light of the legal rules that were clearly established at the time it was taken.'" Id. at 244 (quoting Wilson v. Layne, 526 U.S. 603, 614 (1999)).

In what follows, the Court will address whether Defendant has violated Plaintiff's constitutional rights and whether Defendant is entitled to qualified immunity.

B.    Analysis

   1.   False Arrest

The success of a false arrest claim under 42 U.S.C.
§ 1983 depends upon the existence of probable cause. As the
Third Circuit has held, "the Fourth Amendment prohibits a police
officer from arresting a citizen except upon probable cause."
Orsatti v. N.J. State Police, 71 F.3d 480, 482 (3d Cir. 1995)
(citing Papachristou v. City of Jacksonville, 405 U.S. 156, 169
(1972)).

     The Third Circuit has held that "[p]robable cause to
arrest requires more than mere suspicion; however, it does not
require that the officer have evidence sufficient to prove guilt
beyond a reasonable doubt." Orsatti, 71 F.3d at 482-83. Rather,
an arresting officer has probable cause "when the facts and
circumstances within [his] knowledge are sufficient in
themselves to warrant a reasonable person to believe that an
offense has been or is being committed by the person to be
arrested." Id. at 483; see also Beck v. Ohio, 379 U.S. 89, 91
(1964) (requiring the officer at the moment of arrest to have
"had reasonably trustworthy information . . . sufficient to
warrant a prudent man in believing that [the imminent arrestee]
had committed or was committing an offense").

     Here, the circumstances surrounding Plaintiff's arrest
support a finding that probable cause existed. As noted above,

Defendant arrested Plaintiff after swearing out an Affidavit of Probable Cause and obtaining an Arrest Warrant from a magistrate. In addition, Defendant triangulated the evidence from the tipsters and the bank teller eyewitness in determining probable cause. See Def.'s Reply Br. 3 ("Detective Arentzen used a totality-of-the-circumstances approach." (citing Illinois v. Gates, 462 U.S. 213 (1983))). Plaintiff neither "contest[s] the validity of the tipster and witness identification," Def.'s Br. 6, nor provides any independent evidence challenging Defendant's finding of probable cause. Rather, Plaintiff attempts to enshroud in doubt Defendant's actions leading up to the arrest by indicating several perceived weaknesses in the Affidavit. These include: (1) the bank witnesses were asked to identify the perpetrator from an array of eight photographs, even though the "alleged robber [was] covered by large dark sunglasses and a hoody," Pl.'s Br. 8; (2) the "bank surveillance video footage" was not attached to the Affidavit, id. at 9; (3) neither the photograph arrays, nor any photographs at all, were included in the Affidavit, id. at 9-10; (4) the descriptions of the other individuals in the photograph arrays were not included in the Affidavit, id. at 10-11; (5) only one witness--the bank customer service representative[5]--could later identify the robber, id. at

_____

[5]        Plaintiff states incorrectly that the identifying witness was the bank customer service representative. Rather, as

11; (6) the picture printed in the Daily News shows a robber too obscured by sunglasses, hat, and "hoody" to help a tipster make an identification; id. at 12; (7) the Daily News picture shows part of the robber's left hand, which apparently has no visible warts, id.; and (8) Defendant "should have seen [Plaintiff's] hands" at the time of the arrest, and therefore known that Plaintiff was not the robber, id. at 21. Although Plaintiff provides additional examples, these relate to the period after his arrest, and therefore are not relevant for determining the crucial question of whether probable cause existed at the time of his arrest. See Beck, 379 U.S. at 91 (locating the probable cause inquiry "at the moment the arrest was made"). In addition, Plaintiff's legal argument notes in particular the lack of photographs attached to the Affidavit, and contends that "[t]here is not sufficient information upon which a reasonable officer could act." Pl.'s Br. 31, 33. Aside from this and other patently conclusory statements, Plaintiff offers no argument.

Plaintiff appears to believe the Affidavit's alleged problems speak for themselves in damning the document's ability to support probable cause. They do not. Proceeding through the litany of "disturbing" factors and weaknesses Plaintiff alleges

---

the Affidavit makes clear, it was the bank teller next to the complainant/victim who made the identification. Aff. Probable Cause 2.

the Affidavit to contain, id. at 8, the Court notes the
following. First, the fact that one eyewitness believed he was
able to identify the robber from the photograph array militates
against Plaintiff's contention that the robber was too covered
up to be identifiable. Similarly, as Defendant notes, the fact
that two tipsters believed they were able to identify the robber
counters Plaintiff's argument that the picture printed in the
Daily News did not provide sufficient detail. See Def.'s Reply
Br. 3. Second, as Defendant asserts, the Affidavit itself only
references bank photographs, not a surveillance video, and
Plaintiff does not provide evidence that such a video exists,
other than his own deposition testimony. See Aff. Probable Cause
2; Def.'s Reply Br. 2; Def.'s Br. Ex. 3, Martinez Dep. 26:7-
27:2, Aug. 29, 2014.

Third, as Defendant notes, Plaintiff insinuates but
offers no evidence that Defendant's use of the photograph arrays
to obtain identifications was flawed or fraudulent in any way.
See Def.'s Reply Br. 2. Without providing the other pictures
allegedly used in the investigation, Plaintiff has not
sufficiently undermined the identification process.

Fourth, the fact that only one eyewitness identified
Plaintiff as the robber does not destroy probable cause.
Extraneous factors such as sightlines, recall, and shock may
have prevented the other eyewitnesses from making an

identification. But, more importantly, it is "well-established" that "probable cause may be based on a single and reasonably reliable eyewitness identification." <u>Greene v. City of Phila.</u>, No. 97-4264, 1998 WL 254062, at *7 (E.D. Pa. May 8, 1998); <u>see also</u> <u>Wilson v. Russo</u>, 212 F.3d 781, 790 (3d Cir. 2000) (holding that "a positive identification by a victim witness, without more, would usually be sufficient to establish probable cause," absent "[i]ndependent exculpatory evidence or substantial evidence of the witness's own unreliability that is known by the arresting officers"). Plaintiff has not provided anything other than conjecture to show that the eyewitness was unreliable or that his identification was faulty.

Finally, the question of whether Defendant should have seen the warts on Plaintiff's hands and realized that he could not have been the robber is something of a red herring. In this case, Defendant obtained eyewitness and tipster identification, drafted and swore out the Affidavit, and obtained the Arrest Warrant, all before ever setting eyes on Plaintiff. At this point, probable cause indisputably existed. It cannot be undermined by Defendant's alleged failure to recognize the importance of the warts at the time of the arrest. At most, the warts represent a "trivial discrepancy" that is more than offset

by the inculpatory evidence Defendant already possessed.[6] See
Lallemand v. Univ. of R.I., 9 F.3d 214, 217 (1st Cir. 1993)
("The discrepancies concerning assailant's first name, hair
style, dormitory and height are trivial, given their nature and
the positive identification of Lallemand by Eckman."); see also
Wilson, 212 F.3d at 792-93 (affirming a finding of probable
cause supported by positive identification, despite
discrepancies related to the defendant's height, identification,
and location at the time of the incident); White v. Brown, No.
08-606, 2010 WL 1740717, at *5 (E.D. Pa. Apr. 28, 2010)
(Robreno, J.) (finding probable cause based on positive
eyewitness identification, even though eyewitness's initial
description of perpetrator's braided hair did not match the
defendant's unbraided hair). Defendant's knowledge of the warts
may be relevant on a different claim, but they do not support
the false arrest claim.

   For all the reasons given above, Plaintiff has not
established a lack of probable cause, and his false arrest claim
under § 1983 must therefore fail.

---

[6]    Furthermore, Plaintiff has not effectively answered
the obvious question of whether Defendant should reasonably have
known that the skin condition was permanent--or even that it
existed in the same form at the time of the robbery, more than
two weeks before the arrest.

2.   <u>False Imprisonment</u>

"A false imprisonment claim under 42 U.S.C. § 1983 is based on the Fourteenth Amendment protection against deprivations of liberty without due process of law." Groman v. Twp. of Manalapan, 47 F.3d 628, 636 (3d Cir. 1995) (citing Baker v. McCollan, 443 U.S. 137, 142 (1979)). In this context, the Fourth Amendment--as incorporated through the Fourteenth-- "requires the States to provide a fair and reliable determination of probable cause as a condition for any significant pretrial restraint of liberty." Baker, 443 U.S. at 142 (citing Gerstein v. Pugh, 420 U.S. 103, 125 (1975)). Accordingly, "an arrest based on probable cause [cannot] become the source of a claim for false imprisonment." Groman, 47 F.3d at 636 (citing Baker, 443 U.S. at 143-44)).[7]

Here, the Court has already established that the circumstances surrounding Plaintiff's arrest support a finding of probable cause. Because Plaintiff is not able to show a lack of probable cause, his false imprisonment claim under § 1983 necessarily founders. See id.

---

[7]      Notably, the Supreme Court has also held that "since the probable cause standard for pretrial detention is the same as that for arrest, a person arrested pursuant to a warrant issued by a magistrate on a showing of probable-cause is not constitutionally entitled to a separate judicial determination that there is probable cause to detain him pending trial." Baker, 443 U.S. at 143.

3.   <u>Malicious Prosecution</u>

In order to prevail on a § 1983 malicious prosecution claim, a plaintiff must show the following:

> (1) the defendants initiated a criminal proceeding; (2) the criminal proceeding ended in the plaintiff's favor; (3) the proceeding was initiated without probable cause; (4) the defendants acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered a deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding.

<u>DiBella v. Borough of Beachwood</u>, 407 F.3d 599, 601 (3d Cir. 2005) (quoting <u>Estate of Smith v. Marasco</u>, 318 F.3d 497, 521 (3d Cir. 2003)).

The parties dispute whether the first, third, and fourth elements of a malicious prosecution claim have been satisfied in this case. Regarding the first element--initiating a criminal proceeding--"a plaintiff can only proceed against a police officer under a malicious prosecution theory" (i.e., show that the officer "initiated" the proceeding) "if the officer 'knowingly provided false information to the prosecutor or otherwise interfered with the prosecutor's informed discretion.'" <u>Domenech v. City of Phila.</u>, 06-1325, 2009 WL 1109316, at *8 (E.D. Pa. Apr. 23, 2009) (quoting <u>Harris v. City</u>

of Phila., No. 97-3666, 1998 WL 481061, at *5 (E.D. Pa. Aug. 14, 1998)).[8]

Defendant asserts that the District Attorney's office used the Affidavit of Probable Cause in order to assess whether to initiate the proceedings and bring charges against Plaintiff. Def.'s Br. 7. Because neither Plaintiff nor any of the evidence produced in this case contradicts this assertion, the Court will assume that the decision to initiate the proceedings followed this course. As a result, in order to survive summary judgment on this claim, Plaintiff must show either that the Affidavit Defendant submitted was knowingly false or lacked information material to the finding of probable cause. See Domenech, 2009 WL 1109316, at *8. Aside from hoping that the Court will make a negative inference from the Affidavit's "weaknesses" (see False Arrest section above), Plaintiff provides no evidence that Defendant knowingly submitted false information or omitted material exculpatory facts in the Affidavit. As determined above, Plaintiff has failed to show a lack of probable cause in this case; he therefore fails to establish that Defendant

_____

[8]     See also id. at 8-9 (noting that the Third Circuit has not ruled directly on whether an investigating police officer can be held liable for malicious prosecution, but citing numerous district court opinions and the Second Restatement of Torts in support of this proposition); Carney v. Pennsauken Twp. Police Dep't, No. 14-1844, 2015 WL 294379, at *2 (3d Cir. Jan. 23, 2015) (nonprecedential) (analyzing a malicious prosecution claim against a police officer).

"initiated" the proceeding in satisfaction of this first element.

Plaintiff also has a timing problem. He appears to argue that Defendant should have realized after arresting and questioning him that there was no way he could have committed the crime. Allegedly, Defendant has several photographs of the bank robbery showing the robber's hands, which Plaintiff viewed after his arrest. See Pl.'s Br. 20; Martinez Dep. 25:12-27:14, 38:24-39:14. In addition, at some later point the eyewitnesses were allegedly shown pictures of Plaintiff's hands, prompting them to deny that Plaintiff committed the crime. See Martinez Dep. 39:14-40:2. Finally, Plaintiff avers that the prosecutor was not made aware of the skin condition until the first hearing. Id. at 40:2-9. Unfortunately for Plaintiff, none of these alleged occurrences vitiate probable cause at the time of arrest, which is the critical moment of time in a malicious prosecution claim.[9] See, e.g., Zeglen v. Miller, No. 04-1940, 2008 WL 696940, at *10 (M.D. Pa. Mar. 12, 2008) (noting that "to prevail on [a malicious prosecution] claim, [the plaintiff] must

---

[9]     Moreover, given Defendant's lack of medical knowledge of Plaintiff's skin condition, it would not have been reasonable for him to believe without further investigation whether and to what degree the condition exculpated Plaintiff. See also supra note 6. Plaintiff does not argue, nor can he, that Defendant should have recognized the exculpatory effect of the skin condition before the prosecutor decided to charge Plaintiff.

show that the officers lacked probable cause to arrest her."
(alterations in original) (quoting Johnson v. Knorr, 477 F.3d
75, 82 (3d Cir. 2007)) (internal quotation marks omitted)). Any
negligence that Defendant may have committed after the arrest
and after the prosecutor decided to charge Plaintiff may be
relevant to a claim of unlawful continued incarceration, but is
not relevant for his claim here.[10] Accordingly, he has not
satisfied the first element of his malicious prosecution claim.

     The remaining disputed elements in Plaintiff's claim
may be dispatched with more quickly. Regarding the third
element--initiating a proceeding without probable cause--the
Court has already established that the circumstances surrounding
Plaintiff's arrest support a finding of probable cause.
Therefore, Plaintiff has not satisfied the third element of his
malicious prosecution claim. See, e.g., Zeglen, 2008 WL 696940,
at *10. Finally, regarding the fourth element--a showing that

---

[10]    The Third Circuit has noted that the case law is not
settled on what post-arrest duty an investigating officer has to
inform the prosecutor of exculpatory evidence. See Wilson, 212
F.3d at 792 (declining to decide this issue, but holding that
"[r]egardless of the existence and scope of an officer's duty to
seek to release a suspect when probable cause no longer exists,
or the level of knowledge that he or she must have in order to
trigger that duty, the interview with [a witness] clearly did
not dispel the earlier probable cause"). As the Wilson court
noted, the perceived quality (or lack thereof) of post-arrest
investigations do not automatically implicate due process
concerns either. See id. at 792 n.11 (quoting Baker, 443 U.S. at
145-46).

Defendant "acted maliciously or for a purpose other than bringing the plaintiff to justice," DiBella, 407 F.3d at 601-- Plaintiff offers no evidence at all. Plaintiff argues to here because the Affidavit was allegedly "devoid on its face of any factual support," this fact supports an inference of malice. Pl.'s Br. 33. However, as already discussed at length, the Affidavit and other circumstances surrounding Plaintiff's arrest support a finding of probable cause. Clearly, Plaintiff "has offered no evidence beyond speculation and inference that [Defendant] acted out of any motivation other than to investigate the serious charges against him," Zeglen, 2008 WL 696940, at *9, and he cannot satisfy the fourth element of his malicious prosecution claim.[11]

Because Plaintiff cannot satisfy all the elements of his malicious prosecution claim under § 1983, it must fail.

---

[11]    See also Domenech, 2009 WL 1109316, at *12 ("Finally, even assuming a failure to disclose evidence that was exculpatory in nature, Plaintiffs point to no evidence suggesting that the failure was intentional or malicious."); Merrero v. Micewski, No. 96-8534, 1998 WL 414724, at *10 (E.D. Pa. July 22, 1998) ("The fact that Plaintiff disputes some aspects of [one defendant's] account of his arrest is not sufficient to create an inference that [defendants] acted against Plaintiff with malice or for a purpose other than to bring Plaintiff to justice.").

Accordingly, the Court will grant summary judgment on this claim.[12]

    4.  <u>State Law Claims</u>

Pursuant to the discussion above, the Court will grant summary judgment on and dismiss Plaintiff's § 1983 claim (Count I), which is the only claim based on federal law and on which the Court had original jurisdiction. <u>See</u> 28 U.S.C. § 1331. The state law claims that remain (Counts II-IV) "form part of the same case or controversy" as the federal law claim and were properly before the Court on the basis of supplemental jurisdiction. <u>See</u> 28 U.S.C. § 1367(a). However, though the Court retains the "constitutional power" to adjudicate pendent state law claims after a federal law claim has dropped out of a case, it has full discretion whether to do so or not. <u>Lentino v. Fringe Emp. Plans, Inc.</u>, 611 F.2d 474, 478 (3d Cir. 1979); <u>see also</u> 28 U.S.C. § 1367(c)(3). Given that the remaining claims here are tort claims brought under Pennsylvania law, the Court declines to exercise jurisdiction over them and will dismiss

---

[12]    Defendant also asserts a defense of qualified immunity, which the Court has considered. <u>See</u> Def.'s Br. 9-11. Because, as discussed above, Plaintiff has not shown that Defendant violated any of his constitutional rights, he cannot satisfy the first element in the <u>Saucier</u> qualified immunity inquiry. <u>See</u> <u>Saucier</u>, 533 U.S. at 200. Defendant is therefore entitled to qualified immunity. For this additional reason, the Court will grant summary judgment with respect to Plaintiff's § 1983 claim.

them without prejudice. See Zeglen, 2008 WL 696940, at *11
(noting that remaining claims were "simple tort claims under
well-settled Pennsylvania law" and declining to exercise
jurisdiction over them because "[f]ederal courts have no
interest in adjudicating such state-law claims"); Borough of W.
Mifflin v. Lancaster, 45 F.3d 780, 788 (3d Cir. 1995) ("[W]here
the claim over which the district court has original
jurisdiction is dismissed before trial, the district court must
decline to decide the pendent state claims unless considerations
of judicial economy, convenience, and fairness to the parties
provide an affirmative justification for doing so.").

## V.   CONCLUSION

For the foregoing reasons, the Court will grant
Defendant's motion for summary judgment and dismiss all of
Plaintiff's claims. An appropriate order follows.